UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,
                Plaintiff,

Case No._____

Hon. _____

ELISABETH MELONE,
HOLLY ADKINS, JUSTIN
MELONE, KATLYN MELONE,
AND GAGE MELONE.
                Defendants.
_____/

DAVID M. DAVIS (P24006)
JOHN M. BOYDA (P39268)
Attorneys for Plaintiff MetLife
Hardy, Lewis & Page, P.C.
401 S. Old Woodward Avenue, Suite 450
Birmingham, Michigan 48009
(248) 645-0800
dmd@hardylewis.com
_____/

## COMPLAINT IN INTERPLEADER

Interpleader-Plaintiff Metropolitan Life Insurance Company ("MetLife"), by and through its attorneys, Hardy, Lewis & Page, P.C., for its Complaint in Interpleader states:

## NATURE OF THE ACTION

This action arises regarding conflicting claims by potential beneficiaries for life insurance benefits in the total amount of SEVENTY FIVE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($75,500.00) (the "Plan Benefits") payable under the FCA US LLC Group Life Insurance Plan (the "Plan"), by reason of the death of the Plan participant Garrett Melone (the "Decedent"). MetLife seeks to deposit the Plan

Benefits of the Decedent into the Court and allow the Court to decide how they should be disbursed. MetLife cannot determine the proper beneficiary or beneficiaries of the Plan Benefits without risking exposure of itself, the Plan and FCA US LLC to multiple claims and liabilities.

## PARTIES

1. Interpleader Plaintiff MetLife is a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York. It is licensed to do business in the State of Michigan.

2. Upon information and belief, Defendant Elisabeth Melone is the spouse of Garrett Melone (the "Decedent"), and she resides in Warren, Michigan.

3. Upon information and belief, Defendant Holly Adkins is a daughter of the Decedent, and she resides in Almont, Michigan.

4. Upon information and belief, Defendant Justin Melone is a son of the Decedent, and he resides in Warren, Michigan.

5. Upon information and belief, Defendant Katlyn Melone is a daughter of the Decedent, and she resides in Warren, Michigan.

6. Upon information and belief, Defendant Gage Melone is a son of the Decedent, and he resides in Warren, Michigan.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action pursuant to 29 U.S.C. § 1132(e) (1) and 28 U.S.C. § 1331 because the action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. This is an interpleader action pursuant to Rule 22 of the Federal Rules of Civil

Procedure.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) because an adverse claimant resides in this judicial district and a substantial part of the events giving rise to this action occurred in this district.

## CAUSE OF ACTION IN INTERPLEADER

9. The Decedent was an employee of Fiat Chrysler Automobiles ("FCA US LLC"), and had life insurance coverage through his employment as a participant under the FCA US LLC Group Life Insurance Plan (the "Plan"), an ERISA-regulated employee welfare benefit plan sponsored by FCA US LLC and funded by a group life insurance policy issued by MetLife. A true and correct copy of the Certificate of Insurance is attached hereto as Exhibit "A".

10. MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan. 29 U.S.C. § 1104(a)(1)(D).

11. ERISA defines a beneficiary as "[a] person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

12. The Certificate of Insurance establishes, at page 55, the right of the Plan participant to name his or her beneficiary. A true and correct copy of page 55 of the Certificate of Insurance is attached hereto as Exhibit "A".

13. Upon information and belief, FCA US LLC switched record keepers for their group life insurance benefits on July 1, 2016 from Aon Hewitt (the benefits administration business segment of Aon Hewitt was subsequently acquired by a private

equity investment firm and is now known as Alight Solutions) to Willis Towers Watson. Aon Hewitt only provided a spreadsheet of the group life insurance beneficiary designations that they had on file to Willis Towers Watson. Upon information and belief, the actual beneficiary designation forms and online beneficiary designations made prior to the switch of record keepers were purged by Aon Hewitt and are not available to MetLife. A true and correct copy of the spreadsheet of beneficiary designations for the Decedent is attached hereto as Exhibit "B".

14. According to the beneficiary designations spreadsheet, the most recent beneficiary designation on file with the Plan for the Decedent is dated May 15, 2015 (the "2015 Beneficiary Designation"), and designates Elisabeth Melone as primary beneficiary for 60% of the Plan Benefits, Gage Melone as primary beneficiary for 10% of the Plan Benefits, Katlyn Melone as primary beneficiary for 10% of the Plan Benefits, Holly Adkins as primary beneficiary for 10% of the Plan Benefits and Justin Melone as primary beneficiary for 10% of the Plan Benefits. See Exhibit "B".

15. According to the beneficiary designations spreadsheet, the next prior beneficiary designation on file with the Plan is dated November 12, 2014 (the "2014 Beneficiary Designation"), and designates Elisabeth Melone as the sole primary beneficiary for 100% of the Plan Benefits. See Exhibit "B".

16. According to the beneficiary designations spreadsheet, the next prior beneficiary designation on file with the Plan for the Decedent is dated November 6, 2009 (the "2009 Beneficiary Designation"), and designates Holly Melone (n/k/a Holly Adkins) as the sole primary beneficiary for 100% of the Plan Benefits. See Exhibit "B".

17. The Decedent died on September 11, 2017. A true and correct copy of

the death certificate for the Decedent is attached hereto as Exhibit "C".

18.     At the time of his death, the Decedent was enrolled under the Plan for Basic Life Insurance coverage in the amount of SEVENTY FIVE THOUSAND FIVE HUNDRED AND 00/100 DOLLARS ($75,500.00) (the "Plan Benefits"). The Plan Benefits became payable to the proper beneficiary or beneficiaries upon the Decedent's death, pursuant to the terms of the Plan.

19.     The Decedent was involved in a motorcycle accident on or about September 10, 2012. According to the death certificate, the Decedent died due to "Complications Following Traumatic Brain Injury" that happened five years prior to the date of death. See Exhibit "C".

20.     By Claimant's Statement dated September 26, 2017, Elisabeth Melone submitted a claim for a portion of the Plan Benefits. A true and correct copy of Elisabeth Melone's September 26, 2017, Claimant's Statement is attached hereto as Exhibit "D".

21.     By Claimant's Statement dated September 28, 2017, Gage Melone submitted a claim for a portion of the Plan Benefits. A true and correct copy of Gage Melone's September 28, 2017, Claimant's Statement is attached hereto as Exhibit "E".

22.     By Claimant's Statement dated September 28, 2017, Katlyn Melone submitted a claim for a portion of the Plan Benefits. A true and correct copy of Katlyn Melone's September 28, 2017, Claimant's Statement is attached hereto as Exhibit "F".

23.     By Claimant's Statement dated September 28, 1994 (sic), Justin Melone submitted a claim for a portion of the Plan Benefits. A true and correct copy of Justin Melone's Claimant's Statement dated September 28, 1994 (sic), is attached hereto as Exhibit "G".

24. By Claimant's Statement dated September 29, 2017, Holly Adkins submitted a claim for the Plan Benefits based upon the November 6, 2009, beneficiary designation naming her as the primary beneficiary of 100 % of the Plan Benefits. A true and correct copy of Holly Adkins' September 29, 2017, Claimant's Statement is attached hereto as Exhibit "H".

25. In addition to Basic Life Insurance, the Certificate of Insurance for FCA US LLC hourly employees provided for Basic Accidental Death and Dismemberment Insurance. However, the Certificate of Insurance provides that the Accidental Death benefit is payable only if the "Covered Loss occurs within 12 months" of the accidental injury that resulted in the loss of life. See Exhibit "A" at page 44. The Decedent's motorcycle accident occurred approximately five (5) years prior to his date of death. See Exhibit "C".

26. Accordingly, by letters dated November 15, 2017, MetLife advised the claimants that the Basic Accidental Death and Dismemberment portion of the claim was denied since the Decedent's motorcycle accident occurred more than twelve (12) months prior to the Decedent's death. True and correct copies of the November 15, 2017, denial letters are attached hereto as Exhibit "I".

27. By an email dated September 26, 2017, Holly Adkins contested the most recent beneficiary designation on file naming Elisabeth Melone, Gage Melone, Katlyn Melone, and Justin Melone as beneficiaries of the Decedent's life insurance stating the Decedent was in a motorcycle accident five years prior to his death that left him with severe brain damage and, therefore, he was unable to make decisions on his own free will. A copy of the September 26, 2017, email is attached hereto as Exhibit "J".

6

28. On November 1, 2017, Elisabeth Melone submitted a doctor's note from Dr. Ronald Y. Barnett stating the Decedent had been his patient and "he was and always has been of sound mind." A true and correct copy of Dr. Barnett's note is attached hereto as Exhibit "K".

29. By letter dated November 15, 2017, MetLife advised the Defendants that their claims were adverse to one another and raised questions of fact and law that could not be resolved by MetLife without exposing itself and the Plan to the danger of double liability. MetLife gave Defendants an opportunity to try and resolve this matter in order to preserve the Plan Benefits from litigation costs and fees. Upon information and belief, no agreement was reached. A true and correct copy of the November 15, 2017, letter is attached hereto as Exhibit "L".

30. By letter dated December 26, 2017, Jerome A. Moore, Esq. advised MetLife that he represented Holly (Melone) Adkins regarding her claim to her father's life insurance benefits and that the parties have not agreed upon a disposition of the life insurance proceeds. A true and correct copy of Jerome Moore's letter dated December 26, 2017, is attached hereto as Exhibit "M".

31. MetLife cannot determine the proper beneficiary or beneficiaries of the Plan Benefits without risking exposure of itself, the Plan and FCA US LLC to multiple claims and liabilities.

32. MetLife cannot determine whether the Court would find that the 2015 Beneficiary Designation naming Elisabeth Melone as primary beneficiary for 60% of the Plan Benefits, Gage Melone as primary beneficiary for 10% of the Plan Benefits, Katlyn Melone as primary beneficiary for 10% of the Plan Benefits, Holly Adkins as primary

7

beneficiary for 10% of the Plan Benefits and Justin Melone as primary beneficiary for 10% of the Plan Benefits is valid or not.

33. If the Court determines that the 2015 Beneficiary Designation is valid, then the Plan Benefits would be payable in accordance with the 2015 Beneficiary Designation.

34. If the Court determines that the 2015 Beneficiary Designation is not valid for any reason, but the 2014 Beneficiary Designation is valid, then the Plan Benefits would be payable to Elisabeth Melone as the sole primary beneficiary of 100% of the Plan Benefits.

35. If the Court determines that both the 2015 Beneficiary Designation and the 2014 Beneficiary Designation are invalid for any reason, and the 2009 Beneficiary Designation is valid, then the Plan Benefits would be payable to Holly Adkins as the sole primary beneficiary of 100% of the Plan Benefits.

36. As a mere stakeholder, MetLife makes no claim to the Plan Benefits, other than payment of its reasonable attorney's fees and costs in connection with this action. MetLife therefore respectfully requests that this court determine to whom the Plan Benefits should be paid.

37. MetLife is ready, willing, and able to pay the Plan Benefits, in accordance with the terms of the Plan, in such amounts and to whichever Defendant or Defendants the Court shall designate.

38. MetLife will deposit into the Registry of the Court the Plan Benefits, plus any applicable interest due and owing under the terms of the Plan, for disbursement in accordance with the Judgment of this Court.

WHEREFORE, Plaintiff MetLife requests the Court:

(i) Restrain and enjoin the Defendants by Order and Injunction of this Court from instituting any action or proceeding in any state or United States court against MetLife, FCA US, LLC, or the Plan for recovery of the Plan Benefits, plus any applicable interest, by reason of the death of the Decedent;

(ii) Require that Defendants litigate or settle and adjust between themselves their claim for the Plan Benefits, or upon their failure to do so, that this court settle and adjust their claims and determine to whom the Plan Benefits, plus any applicable interest, should be paid;

(iii) Permit MetLife to pay into the registry of the court the Plan Benefits, plus any applicable interest, and upon such payment dismiss MetLife with prejudice from this action, and discharge MetLife, FCA US, LLC, and the Plan from any further liability upon payment into the registry of this court, or as otherwise directed by this court;

(iv) Award such other and further relief, including attorney's fees and costs, to which MetLife is entitled in law or equity, as this Court deems just and proper.

Respectfully submitted,

By: s/ David M. Davis
David M. Davis (P24006)
Attorneys for Plaintiff MetLife
Hardy, Lewis & Page, P.C.
401 S. Old Woodward Ave. Suite 450
Birmingham, MI 48009
Tel: 248-645-0800
dmd@hardylewis.com

Dated: January 26, 2018